384 A.2d 1068.

GENERAL ROAD TRUCKING CORPORATION *v.*
PAUL FORSELL & SON, INC.

APRIL 21, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.    This civil action involves a book account to recover a balance due of $18,320.49 allegedly owed to the plaintiff because of the defendant's purchases of gravel and its rental of construction equipment. A jury-waived trial was held in the Superior Court. The trial justice, after listening to conflicting testimony concerning the amount of gravel delivered by the plaintiff and what happened to some of the delivered gravel, found for the plaintiff in the full amount of its claim. Judgment was entered for the plaintiff, and this appeal ensued.

Following the docketing of the appeal and records in this court, plaintiff, taking advantage of Sup. Ct. R. 16(g), moved for a summary dismissal of the appeal on the ground that the decisive issue in this controversy involved the trial justice's factfinding prerogatives and that there was sufficient evidence to support his findings. Thereafter, we issued an order directing defendant to appear before us and show cause why plaintiff's motion should not be granted.

In late November 1969 defendant entered into a written contract with the town of Lincoln whereby defendant agreed to build the Saylesville Elementary School in accordance with plans and specifications previously prepared by the

town's architects. When defendant approached plaintiff and asked it to submit a bid for the furnishing of gravel at the job site, plaintiff refused to do so but said it would furnish gravel upon defendant's demand at a price of $1.75 per cubic yard. According to the agreement, if defendant's superintendent called for gravel, the necessary truckloads would appear on site the following morning. The first truckloads of gravel were delivered to the Saylesville site on December 29, 1969, and continued intermittently thereafter until December 1970.

A crucial question at trial concerned the disposition of some 5,000 cubic yards of "fine gravel" which neither met the architects' specifications nor passed the scrutiny of defendant's testing engineers because the gravel was "too fine." The defendant maintained that the "too fine" gravel was placed in a pile outside the construction area and never used.

The plaintiff insisted that, in agreeing to deliver gravel to the Saylesville site, it had never agreed to be bound by the architects' specifications. A witness for plaintiff who worked on the job site testified that defendant's field superintendent ordered him to move a pile of the "too fine" gravel and mix it with the remaining gravel that unquestionably was in conformity with the "specs." The plaintiff's delivery invoices and ledger sheets indicated that a total of just over 16,000 cubic yards of gravel had been delivered to the building site.

In its attempt to show that the book account was over-inflated, defendant produced an engineer who had calculated the total amount of fill that would have been necessary to prepare the building's foundation. His computations produced a result of 7,450 cubic yards. However, the computations were based solely on the engineer's examination of the architects' plan. The engineer had never made an on-site inspection, and he conceded that his figures contained no allowance for compaction or the amount of topsoil that was removed before the foundation was actually laid.

Conversely, plaintiff produced testimony which showed that before any gravel was spread, plaintiff's bulldozer had been used to remove rubbish, tree stumps, and muck from the area upon which the foundation was to be situated. There was other evidence to show that the gravel, in addition to being used for preparing the foundation, was also used to prepare the school's roadways.

The trial justice found that (1) the plaintiff had not agreed that his gravel would meet the architects' specifications, (2) the defendant's field supervisor, in an effort to get the project well under way before the winter weather shut down operations, had pulled a "fast one" on the architects by mixing the substandard with the standard gravel, and (3) the defendant had indeed used 16,000 cubic yards of fill. In the light of these findings, this is a classic case for the application of Rule 16(g). The defendant has failed to show cause.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Martin M. Zucker,* for plaintiff.

*Resmini, Fornaro & Colagiovanni, John E. Fornaro, Jr., for defendant.*